**Kilpatrick Townsend & Stockton LLP**
ktslaw.com

Suite 2800, 1100 Peachtree Street NE
Atlanta, GA 30309-4528

*VIA CM/ECF*

R. Charles Henn Jr.
direct dial 404 815 6572
direct fax 404 541 3240
CHenn@ktslaw.com

September 17, 2025

**Hon. Mary Kay Vyskocil**
United States District Court, S.D.N.Y.
500 Pearl Street
New York, NY 10007-1312

Re: *Gray Local Media, Inc. v. The Hearst Corporation, et al.*, No. 1:25-cv-05393-MKV

Dear Judge Vyskocil:

Plaintiff Gray Local Media, Inc. ("Gray") opposes Defendants The Hearst Corp., Hearst Props. Inc., and Hearst Stations Inc.'s (collectively "Hearst") pre-motion letter of September 12, 2025 ("Letter"). The proposed Motion would be futile. The Amended Complaint, EFC No. 13 ("Am. Compl."), more than amply alleges each claim asserted. The Court should decline Hearst's request to brief issues that obviously require fact discovery to resolve.

## I. Background

Gray is the nation's largest owner of top-rated local television stations. Am. Compl. ¶¶ 1, 16. Since at least 2005, Gray has used the mark FIRST ALERT WEATHER for weather reporting and, since 2006, the mark FIRST ALERT TRAFFIC for traffic reporting (collectively "FIRST ALERT Marks"). *Id.* ¶¶ 2–3, 18, 20. Both marks are federally registered and incontestable. *Id.* ¶¶ 19, 21; Exs. 1–2. Gray has invested substantial resources in promoting these marks, which have become widely recognized. *Id.* ¶¶ 26–28.

Hearst, a direct competitor, previously licensed Gray's FIRST ALERT Marks. *Id.* ¶¶ 4, 29, 40. After those licenses expired, Hearst began using FIRST WARNING WEATHER and FIRST WARNING TRAFFIC (collectively "FIRST WARNING Marks") in markets that directly overlap with Gray's. *Id.* ¶¶ 5, 30–33, 41–44. The Amended Complaint alleges that the marks at issue are confusingly similar and that Hearst's conduct was willful. *Id.* ¶¶ 6, 38, 41–44. Gray asserts federal trademark infringement and unfair competition (Counts I–II); state-law unfair and deceptive trade practices (Count III); and breach of contract and the implied covenant of good faith and fair dealing (Counts IV–V). *Id.* ¶¶ 49–82.

## II. Lanham Act Claims (Counts I & II)

### A. Likelihood of Confusion Is a Fact-Intensive Inquiry.

Likelihood of confusion is the test for trademark infringement and unfair competition. *Nat. Organics, Inc. v. Nutraceutical Corp.*, 426 F.3d 576, 578 (2d Cir. 2005). When, as here, confusion is properly alleged, courts in the Second Circuit and this District reserve judgment until discovery has concluded at the earliest: "courts in this Circuit typically do not conduct a full analysis into [likelihood of confusion] at the motion to dismiss stage due to its fact-intensive nature." *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 230 (S.D.N.Y. 2023); *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 446 (S.D.N.Y. 2012) (same); *see also Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 303 (E.D.N.Y. 2014) (same).

The unpublished Second Circuit case Defendants cite to argue that the circuit "has affirmed

dismissals" of trademark claims was a *default judgment* case. *See E.A. Sween Co. v. A&M Deli Exp. Inc.*, 787 F. App'x 780, 782–83 (2d Cir. 2019). Other such affirmances were either uncontested or facially meritless. Hearst's request that the Court resolve likelihood of confusion at this stage, when Gray's allegations are amply pleaded, is an invitation to legal error and a waste of the Court's and parties' resources. *Wonderful Co. LLC v. Nut Cravings Inc.*, No. 23-7540-CV, 2025 WL 212064, at *2 (2d Cir. Jan. 16, 2025) ("We hold that the district court erred when it concluded that the Complaint failed to adequately allege a likelihood of confusion.").

**B. Gray Amply Pleads Likelihood of Confusion.**

The proposed Motion would be futile because the Amended Complaint alleges detailed facts indicating likelihood of confusion under the *Polaroid* factors. *See Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). Each factor strongly favors Gray.

**Strength of the Marks:** Gray's FIRST ALERT Marks are federally registered and incontestable, which is conclusive evidence of validity, ownership, exclusivity under 15 U.S.C. § 1115(b). Am. Compl. ¶¶ 19–21. Gray alleges two decades of continuous use in interstate commerce; hundreds of stations and markets; and substantial investment in promoting the FIRST ALERT brand through multiple media. Am. Compl. ¶¶ 19–29. These allegations establish that the marks have achieved significant marketplace recognition and goodwill, making them strong under the *Polaroid* framework. *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 148 (2d Cir. 2003) ("If a mark has been long, prominently and notoriously used in commerce, there is a high likelihood that consumers will recognize it from its prior use.").

**Similarity of the Marks:** The FIRST ALERT and FIRST WARNING Marks are similar. They have the same initial word (FIRST), last words (WEATHER/TRAFFIC) that share the same meaning, and structure: "FIRST + [cautionary term] + WEATHER/TRAFFIC." When two dominant words are the same, and in the same sequence, similarity weighs heavily toward confusion. *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 304–05 (S.D.N.Y. 2021). The only parts of the marks that differ ("ALERT" and "WARNING") are semantically identical, underscoring similarity. *Am. Home Prods. Corp. v. Johnson Chem. Co.*, 589 F.2d 103, 107 (2d Cir. 1978) ("The use of different words with similar meaning may tend to confuse."). Not surprisingly, the United States Patent and Trademark Office ("USPTO") rejected Hearst's application to register FIRST WARNING WEATHER: "[b]ecause the marks in this case look and sound similar and create the same commercial impression, the marks are considered similar for likelihood of confusion purposes." Am. Compl. ¶ 35.

The presence of Hearst's house marks—even if they did always appear with the infringing FIRST WARNING Marks, which is nowhere *near* clear at this stage—does not eliminate confusion. This is yet another fact question inappropriate for resolution at this stage.

**Competitive Proximity:** The parties are direct competitors offering identical services in overlapping markets. Am. Compl. ¶¶ 4, 27, 30–31. The USPTO noted that "[b]ecause . . . the services are ***encompassing***, there is a likelihood of confusion as to the source of [Hearst's] services." *Id.* ¶ 35 (emphasis added). Because the parties' services and channels directly overlap, there is no need for this Court to evaluate whether Defendants might "bridge the gap." *Wonderful Co.*, 2025 WL 212064, at *3.

**Bad Faith:** Hearst's bad faith is clear; it was Gray's licensee for years and adopted FIRST WARNING during or immediately after license terms expired. Am. Compl. ¶¶ 29, 33, 41–45. *See N. Star IP Holdings, LLC v. Icon Trade Servs., LLC*, 710 F. Supp. 3d 183, 210 (S.D.N.Y. 2024) (finding, at *summary judgment*, evidence of bad faith when defendant continued using plaintiff's trademarks after preexisting licenses expired).

**Actual Confusion:** Courts often recognize that actual confusion evidence is rarely available before discovery; thus "such proof is not needed at the pleading stage." *Blockchange Ventures I GP, LLC v. BLOCKCHANGE, INC.*, No. 21 CIV. 891 (PAE), 2021 WL 4340648, at *5 (S.D.N.Y. Sept. 22, 2021); *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1050 (9th Cir. 1999) (calling absence of actual confusion "generally unnoteworthy").

Each of the likelihood-of-confusion factors is amply alleged, and each favors Gray.[1]

## III. State Law Claim (Count III)

Gray plausibly alleges its state-law claims, which should proceed for the same reasons as its federal claims. Am. Compl. ¶¶ 59–62; *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 266 (E.D.N.Y. 2014) ("Courts employ substantially similar standards when analyzing claims for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a) . . . trademark infringement under New York common law; and unfair competition under New York common law."); *Mil. Certified Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*, 251 F. Supp. 3d 750, 758 (D. Del. 2017) ("Plaintiffs' pleading under the Lanham Act is sufficient to support unfair competition under the DDTPA . . .").

## IV. Contract Claims (Counts IV & V)

Gray amply alleges each element of breach of contract and breach of the covenant of good faith. *See* Am. Compl. ¶¶ 63–82. The Amended Complaint attaches the relevant license agreements, Am. Compl. Exs. 3–11, and alleges that Defendants breached the express notice obligations and the implied covenant by adopting confusingly similar marks during or immediately after the license terms. Am. Compl. ¶¶ 40–44, 67–82. Gray's contract-based claims are well pleaded and plainly unsuitable for dismissal at this stage.

Hearst's statute-of-limitations defense raises fact questions about accrual and continuing breaches. The Amended Complaint alleges that Hearst began using "FIRST WARNING" marks during the term of certain License Agreements and continued thereafter. Am. Compl. ¶¶ 41–44. Whether those breaches occurred within limitations periods, or whether Hearst's ongoing conduct constitutes a continuing breach, cannot be decided without a factual record.

Hearst's reading of the notice provision is foreclosed by the plain language, which requires notice of use "by any person." Am. Compl. ¶¶ 42, 68. Hearst is "any person." If Hearst thinks "any person" means "third parties," it must import extrinsic evidence—something the Court cannot consider on a Rule 12(b)(6) motion.

Hearst's assertion that its marks are not "similar" ignores the allegations in the Amended Complaint and the USPTO's refusal to register "FIRST WARNING WEATHER" based on a likelihood of confusion with Gray's FIRST ALERT Marks. Am. Compl. ¶ 35.

Gray's implied covenant claim is likewise well grounded. Hearst's conduct defeated the purpose of the License Agreements and violated the parties' reasonable expectations. Am. Compl. ¶¶ 75–82. Whether Hearst acted in bad faith is a quintessential fact question.

## V. Conclusion

Gray respectfully requests the Court deny Hearst's request for leave to move to dismiss.

---

[1] The remaining *Polaroid* factors (sophistication of consumers and quality) are also fact-intensive and favor Gray. Consumers of local news do not expend much time or resources in choosing weather and traffic coverage; thus, confusion is likely. Gray alleges that Hearst is harming Gray's strong reputation for quality through its infringement, Am. Compl. ¶ 39, and fact discovery will substantiate that allegation.

Respectfully,



R. Charles Henn, Jr.

Cc: Counsel of Record