IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRAY LOCAL MEDIA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE HEARST CORPORATION, a Delaware corporation, HEARST TELEVISION, INC., a Delaware corporation, HEARST PROPERTIES, INC., a Delaware corporation, and HEARST STATIONS, INC., a Nevada corporation,<br><br>Defendants. | No. 1:25-cv-5393-MKV |

**DEFENDANTS THE HEARST CORPORATION, HEARST TELEVISION INC., HEARST PROPERTIES INC., AND HEARST STATIONS INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

Jonathan R. Donnellan
Ravi V. Sitwala
Nathaniel S. Boyer
THE HEARST CORPORATION
Office of General Counsel
300 West 57th Street, 40th Floor
New York, New York 10019
nathaniel.boyer@hearst.com
Phone: (212) 649-2030

*Counsel for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 1

I. GRAY HAS NOT PLAUSIBLY ALLEGED THAT CONSUMER CONFUSION IS LIKELY. ..... 1

A. Implausible Trademark Claims, Like Gray's, May Be Dismissed on a Rule 12(b)(6) Motion. ..... 1

B. The FIRST ALERT Marks Are Weak, Whether They Are Descriptive or Suggestive (Factor 1). ..... 3

C. As Presented to Consumers, the FIRST WARNING Marks Are Not Similar to the FIRST ALERT Marks (Factor 2). ..... 4

D. Gray Has Not Alleged, and Cannot Allege, Actual Consumer Confusion, Despite Six Years of Hearst Using the FIRST WARNING Marks and Three Opportunities to Plead Actual Confusion (Factor 5). ..... 7

E. Gray's Argument Regarding Bad Faith Misses the Mark (Factor 6). ..... 8

F. The Remaining Factors (Factors 3, 4, 7, and 8) Do Not Stand in the Way of Granting Hearst's Motion to Dismiss. ..... 9

II. GRAY HAS FAILED TO STATE A CLAIM UNDER N.Y. GEN. BUS. LAW § 349. ..... 9

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aghaeepour v. N. Leasing Sys., Inc.*,
No. 14 CV 5449 (NSR), 2015 WL 7758894 (S.D.N.Y. Dec. 1, 2015) ....................................10

*Am. Cyanamid Corp. v. Connaught Lab'ys, Inc.*
800 F.2d 306 (2d Cir. 1986)....................................4, 5

*Am. Home Prods. Corp. v. Johnson Chem. Co.*,
589 F.2d 103 (2d Cir. 1978)....................................4, 5

*Arrow Fastener Co. v. Stanley Works*,
59 F.3d 384 (2d Cir. 1995)....................................8

*Blockchange Ventures I GP, LLC v. Blockchange, Inc.*,
No. 21-cv-891(PAE), 2021 WL 4340648 (S.D.N.Y. Sept. 22, 2021) ....................................7

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
174 F.3d 1036 (9th Cir. 1999) ....................................7

*Car-Freshner Corp. v. Am. Covers, LLC*,
980 F.3d 314 (2d Cir. 2020)....................................3, 6, 9

*Casper Sleep, Inc. v. Mitcham*,
204 F. Supp. 3d 632 (S.D.N.Y. 2016)....................................10

*CDC Newburgh Inc. v. STM Bags, LLC*,
692 F. Supp. 3d 205 (S.D.N.Y. 2023)....................................2

*City of New York by & through FDNY v. Henriquez*,
768 F. Supp. 3d 388 (E.D.N.Y. 2025) ....................................8

*Diesel S.p.A. v. Diesel Power Gear, LLC*,
No. 19-CV-9308-MKV, 2022 WL 956223 (S.D.N.Y. Mar. 30, 2022) ....................................9

*Disney Enters., Inc. v. Sarelli*,
322 F. Supp. 3d 413 (S.D.N.Y. 2018)....................................7

*E.A. Sween Co. v. Big City Deli Express Corp.*,
No. 14-CV-6031, 2016 WL 5874998 (E.D.N.Y. Oct. 8, 2016)....................................8

*Edwards v. Sequoia Fund, Inc.*,
938 F.3d 8 (2d Cir. 2019) ....................................9

*Gen. Foods Corp. v. Gen. Mills, Inc.*,
167 U.S.P.Q. (BNA) 638 (T.T.A.B. 1970) ....................5

*H. Sichel Sohne, Gmbh v. Michel Monzain Selected Wines, Inc.*,
202 U.S.P.Q. (BNA) 62 (T.T.A.B. 1979) ....................5

*Hancock v. Am. Steel & Wire Co. of N.J.*,
203 F.2d 737 (C.C.P.A. 1953) ....................5

*Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.*,
281 F.2d 755 (2d Cir. 1960)....................8

*Jahr Printing & Pub. Co. v. Meredith Corp.*,
991 F.2d 1072 (2d Cir. 1993)....................3, 4, 5

*Kelly-Brown v. Winfrey*,
717 F.3d 295 (2d Cir. 2013)....................1

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
543 U.S. 111 (2004)....................9

*Kuklachev v. Gelfman*,
600 F. Supp. 2d 437 (E.D.N.Y. 2009) ....................10

*Lebewohl v. Heart Attack Grill LLC*,
890 F. Supp. 2d 278 (S.D.N.Y. 2012)....................6

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*,
426 F.3d 532 (2d Cir. 2005)....................5

*Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*,
220 F.R.D. 39 (S.D.N.Y. 2004) ....................2

*Masterpiece of Pa., Inc. v. Consol. Novelty Co.*,
368 F. Supp. 550 (S.D.N.Y. 1973)....................5

*Merck & Co. v. Mediplan Health Consulting, Inc.*,
425 F. Supp. 2d. 402 (S.D.N.Y. 2006)....................2

*N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*,
102 A.D.3d 5 (2d Dep't 2012) ....................10

*Nabisco, Inc. v. Warner-Lambert Co.*,
220 F.3d 43 (2d Cir. 2000)....................5

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
647 N.E.2d 741 (N.Y. 1995)....................10

*Paddington Corp. v. Attiki Imps. & Distribs., Inc.*,
996 F.2d 577 (2d Cir. 1993)....................8

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*,
887 F. Supp. 2d 519 (S.D.N.Y. 2012)....................10

*RiseandShine Corp. v. PepsiCo, Inc.*,
41 F.4th 112 (2d Cir. 2022)....................3

*Savin Corp. v. Savin Grp.*,
391 F.3d 439 (2d Cir. 2004)....................4

*Sola Franchise Corp. v. Solo Salon Studios Inc.*,
No. 14-CV-0946, 2015 WL 1299259 (E.D.N.Y. Mar. 23, 2015)....................10

*Streetwise Maps, Inc. v. VanDam, Inc.*,
159 F.3d 739 (2d Cir. 1998)....................3, 4

*The Name LLC v. Arias*,
No. 10-cv-3212(RMB), 2010 WL 4642456 (S.D.N.Y. Nov. 16, 2010)....................2

*Two Hands IP LLC v. Two Hands Am., Inc.*,
563 F. Supp. 3d 290 (S.D.N.Y. 2021)....................6

*Van Praagh v. Gratton*,
993 F. Supp. 2d 293 (E.D.N.Y. 2014)....................10

*Wilson v. Nw. Mut. Ins. Co.*,
625 F.3d 54 (2d Cir. 2010)....................10

*Wonderful Co. LLC v. Nut Cravings Inc.*,
No. 23-7540-CV, 2025 WL 212064 (2d Cir. Jan. 16, 2025)....................2, 8

**Statutes**

N.Y. Gen. Bus. Law § 349....................9, 10

**Other Authorities**

3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §
23:29 (5th ed. 2025)....................5

Hearst submits this reply memorandum of law in response to Gray's Opposition to Defendants' Motion to Dismiss, ECF No. 40 (the "Opposition" or "Opp."), and in further support of its motion to dismiss, ECF No. 37 (the "Motion").[1]

## PRELIMINARY STATEMENT

While Gray's Opposition presents several uncontroversial general propositions—for example, likelihood of confusion is often a fact issue and lack of actual confusion is not always dispositive—it fails to confront the actual facts it has alleged and the clear Second Circuit precedent applicable to those facts. FIRST ALERT WEATHER and FIRST ALERT TRAFFIC are weak marks that describe precisely the service they identify—that the television station will provide viewers with timely updates on weather and traffic. And, as is customary in the television industry, viewers are constantly reminded of who is the source of the news they are watching by the ever-present station call letters. Given these factors (and others), it is entirely unsurprising that Gray is unable to allege any actual confusion despite *six years* of concurrent use of Gray's marks and Hearst's marks. It is on these facts that Gray's claim becomes implausible, as Hearst's cited cases show.

## ARGUMENT

### I. GRAY HAS NOT PLAUSIBLY ALLEGED THAT CONSUMER CONFUSION IS LIKELY.

#### A. Implausible Trademark Claims, Like Gray's, May Be Dismissed on a Rule 12(b)(6) Motion.

The Second Circuit has repeatedly recognized that likelihood of consumer confusion may be evaluated on a motion to dismiss, *see* Mem. 10-12, notwithstanding the inquiry's "fact-intensive" nature, *see* Opp. 5 (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 307 (2d Cir.

---

[1] Unless defined herein, capitalized terms have the same definition as in Hearst's opening memorandum of law, ECF No. 38 (Hearst's "Memorandum" or "Mem.").

2013)). And Gray offers no response to, or explanation for, the ten cases cited at footnote three in Hearst's Memorandum, in which courts dismissed (or affirmed the dismissal of) infringement claims on a Rule 12(b)(6) motion for failure to plausibly allege a likelihood of consumer confusion. *See* Mem. 10-11 n.3.

Instead, Gray points to four district court cases in which the Court declined to conduct a likelihood of confusion analysis at the Rule 12(b)(6) stage—and they are all readily distinguishable. Two concerned the use of *identical* marks for the same product, which is not the case here. *See* Opp. 5 (citing *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 230 (S.D.N.Y. 2023) ("counterfeit" phone cases with "identical" mark used "to advertise or sell the same type of goods that the plaintiff sells"), and *The Name LLC v. Arias*, No. 10-cv-3212(RMB), 2010 WL 4642456, at *3 (S.D.N.Y. Nov. 16, 2010) (nightclubs: The "40/40 Club" vs. the "Forty Forty Club" with website accessible in the United States). The other two pre-date the "plausibility" standard of *Twombly* and *Iqbal*. *See* Opp. 5 (citing *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d. 402, 412 (S.D.N.Y. 2006), and *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 220 F.R.D. 39, 40 (S.D.N.Y. 2004)).

*Wonderful Co. LLC v. Nut Cravings Inc.*, a trade dress case, is inapposite. No. 23-7540-CV, 2025 WL 212064, at *2 (2d Cir. Jan. 16, 2025). In that case, the "similarity of the marks" factor turned on whether the packaging had the same "general impression." *Id.* at *4. And in *Wonderful Co.*, the Second Circuit found the similarity of the product packaging notable, citing the near-identical color schemes, similar "sans serif typeface" for the "singular word 'PISTACHIOS,'" and "two semi-circular windows splayed on either side of the package depicting pistachio nuts," among other similarities in the packaging. *Id.* at *2. Here, in contrast, there is no similarity between the word marks at issue in this case. *See supra* Point I.C.

### B. The FIRST ALERT Marks Are Weak, Whether They Are Descriptive or Suggestive (Factor 1).

Gray argues that its FIRST ALERT Marks are suggestive, not descriptive, because FIRST ALERT WEATHER and FIRST ALERT TRAFFIC "do not necessarily conjure up the image of news reporting." Opp. 9 n.1. But the words "Weather" and "Traffic" in the marks signal that the product at issue is, in fact, reports about weather and traffic. When coupled with "First Alert"—common words in news and traffic reporting, *see infra*—it takes no imagination to guess what the product is. *See Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1074, 1076 (2d Cir. 1993) ("PARENTS," for a magazine about parenting, is a descriptive mark; it "tells something about a product, its qualities, ingredients or characteristics").

But even if the FIRST ALERT Marks were "suggestive," "the strong logical associations" between alerts and news reports "represent weakness and place the mark[s] at the low end of the spectrum of suggestive marks." *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 121 (2d Cir. 2022) ("Rise" for a coffee product).[2] "Because the word" alert "is so tightly linked with the perceived virtues of" the news, "the mark is inherently weak and commands a narrow scope of protection." *Id.* at 122.

Moreover, "[w]hen the word that makes a mark somewhat suggestive is widely used in competitive, nearly competitive, and other products, its suggestive quality substantially loses what that quality would otherwise contribute to the strength of a trademark." *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 330 (2d Cir. 2020) ("Breeze" used commonly in car air fresheners). Here, Gray does not dispute that "'First' and 'Alert' are obvious and common

---

[2] Gray does not cite or address *RiseandShine* in its Opposition, even though Hearst cites it seven times in its Memorandum. Gray also ignores *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739 (2d Cir. 1998), a highly analogous case cited five times in Hearst's Memorandum.

words used in the context of weather and traffic reporting." Mem. 14 (collecting cases). Thus, Gray's marks "should not receive the fullest protection available under the law." *Streetwise Maps*, 159 F.3d at 744 ("Suggestiveness, however, does not necessarily determine the issue regarding the strength of the mark."). And while the Court may consider the fact that the FIRST ALERT Marks' lengthy registration affords them "incontestable" status, Opp. 9, it does not follow that the marks are strong for purposes of the *Polaroid* test. *See Gruner*, 991 F.2d at 1077-78 ("incontestable" marks nonetheless "weak"). The case cited by Gray proves this point. Opp. 9 (citing *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 457-58 (2d Cir. 2004) (though the plaintiff's mark "enjoys a conclusive presumption of distinctiveness," agreeing with district court's "ultimate determination that the first *Polaroid* factor, strength of the mark, weighs in favor of [d]efendants")).

### C. As Presented to Consumers, the FIRST WARNING Marks Are Not Similar to the FIRST ALERT Marks (Factor 2).

Gray walks right into the *Roach Motel* trap. Opp. 11 (citing *Am. Home Prods. Corp. v. Johnson Chem. Co.*, 589 F.2d 103 (2d Cir. 1978) ("*Roach Motel*"). Citing that case, Gray argues that the "identical meaning" of "Alert" and "Warning" "enhanc[e] the similarity of the overall marks." Opp. 11. But the Second Circuit rejected this argument on facts highly analogous to those present here. *See Am. Cyanamid Corp. v. Connaught Lab'ys, Inc.* 800 F.2d 306 (2d Cir. 1986) ("*HIB-IMUNE*").

As the Second Circuit explained in *HIB-IMUNE*, the "ROACH MOTEL" mark is "fanciful in conception." *Id.* at 309. A consumer "would be unlikely to differentiate between 'Motel' and 'Inn' in his recollection," and would instead "recall simply a fanciful abode for roaches in an establishment normally frequented by human travellers [sic]." *Id.* (citation

omitted).[3] The same could not be said for the vaccine labeled "HIB-IMUNE": Although "VAX" and "IMUNE" "may well have a similar meaning," "that meaning lies entirely in their descriptive reference to vaccination and immunization." *Id.* The Court of Appeals therefore reversed the grant of a preliminary injunction and—finding the claim especially meritless—found "no infringement as a matter of law," and directed that the plaintiff's complaint be "dismissed." *Id.* at 307.

Gray ignores *HIB-IMUNE* in its Opposition, even though Hearst addressed this case at length in its Memorandum. *See* Mem. 18-19. As Hearst explained, the present "case is far more like *HIB-IMUNE* than like the *Roach Motel* Case," Mem. 18, as the FIRST ALERT Marks are "straightforward" and "descriptive" marks, devoid of any "fanciful concept or ironic meaning," *HIB-IMUNE*, 800 F.2d at 309.

As Hearst also explained, in evaluating the "overall impression on a consumer," *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) (citing *Gruner*, 991 F.2d at 1078), Hearst's "prominent use of its well-known house brand" alongside the FIRST WARNING Marks "significantly reduces, if not altogether eliminates, the likelihood that consumers will be confused as to the source of the parties' products." *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000). And in Gray's Complaint, *all seven* "[r]epresentative examples" feature the prominent use of station call signs

---

[3] The examples cited by the McCarthy treatise (cited in Gray's Opposition) are also all terms that, like "Roach Motel," bear little-to-no relation to the underlying product. Opp. 11 (citing 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:29 (5th ed. 2025), for terms at issue in *Gen. Foods Corp. v. Gen. Mills, Inc.*, 167 U.S.P.Q. (BNA) 638 (T.T.A.B. 1970) ("AWAKE" for "frozen concentrate for imitation orange juice"), *H. Sichel Sohne, Gmbh v. Michel Monzain Selected Wines, Inc.*, 202 U.S.P.Q. (BNA) 62 (T.T.A.B. 1979) ("BLUE NUN" for wine), *Hancock v. Am. Steel & Wire Co. of N.J.*, 203 F.2d 737, 739 (C.C.P.A. 1953) ("CYCLONE" for "wire fencing, fence posts and gates"); *Masterpiece of Pa., Inc. v. Consol. Novelty Co.*, 368 F. Supp. 550, 551 (S.D.N.Y. 1973) ("MOUNTAIN KING" for artificial Christmas trees)).

and branding alongside the FIRST WARNING Marks. *See* SAC ¶ 33.

Gray makes no serious effort to address the Second Circuit cases emphasizing that the use of house marks tends to negate the likelihood of consumer confusion.[4] Mem. 16-17. Instead, Gray's response is to speculate that, perhaps, Hearst's house brands do not "always appear beside the FIRST WARNING Marks." Opp. 17. But Gray does not specifically allege that Hearst uses the FIRST WARNING Marks *without* Hearst's house marks. *See generally* SAC. And Gray has had *six years* to discover such uses. That it has failed to do so is telling.

Beyond that, Gray oddly claims that the FIRST WARNING Marks feature "two dominant words" used in the "same sequence" as the FIRST ALERT Marks. Opp. 11. But that's misleading. There is a *different* word in the middle of each mark—"Warning" and "Alert"—and the "identical" words (First + Weather and First + Traffic) are therefore *not* "in sequence." The cases cited by Gray illustrate this distinction. *See* Opp. 11 (citing *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290 (S.D.N.Y. 2021) (both marks for restaurants use the words "Two Hands" in sequence); *Car-Freshner*, 980 F.3d at 327 (car air freshener with the words "Black Ice" in sequence). And while Gray notes that a single USPTO examining attorney found FIRST ALERT WEATHER and FIRST WARNING WEATHER to be similar, Opp. 11, Gray (i) does not dispute that the examining attorney's decision is entitled to "limited" "deference," Mem. 22 (citing *Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 292, 302 (S.D.N.Y. 2012)), and (ii) Gray does not respond to Hearst's argument that the examining

---

[4] As it does throughout the Opposition, Gray simply labels this another "fact issue." Opp. 18. And it also claims (without support) that the same people it alleges are unsophisticated "'low-consideration' consumers," Opp. 14 (citing SAC ¶ 40), are also "familiar with the reality that single corporations often own and operate multiple local television news stations, each identified by different call signs," Opp. 18. This contradictory speculation should be rejected out of hand. Likewise, the Court should disregard Gray's dubious speculation that, within a specific market, the house brands or call signs for a specific station are not "well-known." Opp. 19.

attorneys' decisions make no sense, particularly as it concerns FIRST WARNING TRAFFIC, Mem. 22-23 n.7.

### D. Gray Has Not Alleged, and Cannot Allege, Actual Consumer Confusion, Despite Six Years of Hearst Using the FIRST WARNING Marks and Three Opportunities to Plead Actual Confusion (Factor 5).

Gray has been unable to allege *any* evidence of actual consumer confusion despite concurrent use of the marks *for approximately six years*. SAC ¶ 35(c). Case law instructs that a lack of actual consumer confusion despite years of concurrent use weighs "strongly" in the defendants' favor. *See* Mem. 19 (collecting cases where no actual confusion with as little as three years of concurrent use weighed "strongly" in the defendant's favor).[5]

Gray's Opposition offers neither a response to these cases, nor an explanation for why there has been no actual confusion despite six years of concurrent use. Instead, Gray cites to the general principle that the absence of allegations of actual confusion, in itself, is not dispositive. This ignores the extreme facts of this case. *See, e.g.*, *Disney Enters., Inc. v. Sarelli*, 322 F. Supp. 3d 413, 436 (S.D.N.Y. 2018) (six years of concurrent use: "That Plaintiffs and Defendants have used similar marks over a substantial period of time without ever producing a single recorded instance of consumer confusion shows that there is no likelihood of consumer confusion.").

Gray's other cases do not support its argument. For example, in *Blockchange Ventures I GP, LLC v. Blockchange, Inc.*, the plaintiff and defendant used "identical" marks, and plaintiff brought suit within approximately one year of defendant's use of the mark. No. 21-cv-891(PAE), 2021 WL 4340648 (S.D.N.Y. Sept. 22, 2021). In that (very different) context, the Court found the lack of evidence of actual confusion unremarkable at the pleadings stage. *Id.* at

---

[5] One case cited by Gray reached the same conclusion for this same reason. Opp. 15 (citing *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1050 (9th Cir. 1999) (finding no likelihood of consumer confusion where the "two marks have been used simultaneously for years with no resulting confusion").

*4 n.3. In *Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.*—decided before *Polaroid*—there *was* evidence of actual consumer confusion, unlike here. 281 F.2d 755, 761 (2d Cir. 1960). And *Wonderful Co.* featured no allegations of prolonged concurrent use. *See* 2025 WL 212064, at *3.

**E. Gray's Argument Regarding Bad Faith Misses the Mark (Factor 6).**

Gray's argument that Hearst acted in "bad faith" assumes that the similarities between the marks are "so strong that it seems plain that deliberate copying has occurred." Opp. 12 (quoting *City of New York by & through FDNY v. Henriquez*, 768 F. Supp. 3d 388, 410 (E.D.N.Y. 2025), *appeal docketed*, No. 25-641 (2d Cir. Mar. 19, 2025)). That reasoning does not apply here—Hearst's use lacks the striking similarity of the uses at issue in the cases on which Gray relies. *Cf. Hernriquez*, 768 F. Supp. 3d. 388 (FDNY continued to use *identical* marks after the plaintiff discontinued the license); *Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 586 (2d Cir. 1993) (trade dress for bottles of an aperitif, where "[t]he differences [were] minimal" and "subtle"). If Gray truly thought that the similarities between the FIRST ALERT Marks and the FIRST WARNING Marks were "so strong," then it would not have waited four years to raise the issue with Hearst, and then another two years to file this suit.

Further, Gray ignores *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384 (2d Cir. 1995), cited by Hearst, *see* Mem. 17, in which the Court of Appeals held that the fact that defendant "was aware of [the plaintiff's] mark before it made any significant use of" the allegedly infringing mark does not suggest bad faith. *See also id.* at 398 (citation omitted) (no bad faith where defendant "selected a [different] mark that reflected the product's characteristics"). And Hearst's continued use of the FIRST WARNING Marks after receiving notice from Gray's in-house counsel in 2023 does not support bad faith. *See E.A. Sween Co. v. Big City Deli Express Corp.*, No. 14-CV-6031, 2016 WL 5874998, at *6 (E.D.N.Y. Oct. 8, 2016). The fact that Hearst couples its use of the FIRST WARNING Marks with its house brand call signs further

undermines the suggestion that Hearst is engaging in a bad faith attempt to mimic Gray's product.

### F. The Remaining Factors (Factors 3, 4, 7, and 8) Do Not Stand in the Way of Granting Hearst's Motion to Dismiss.

Gray agrees that the comparative quality factor (Factor 7) is neutral. Gray's allegation that its viewers are "low-consideration" consumers who exercise a "low degree of care" in "select[ing] news and traffic reporting" (Factor 8) is a conclusory allegation. Opp. 14. It does little more than track the wording of this factor under the *Polaroid* test, with no plausible factual allegations in support. *See Diesel S.p.A. v. Diesel Power Gear, LLC*, No. 19-CV-9308-MKV, 2022 WL 956223, at *7 (S.D.N.Y. Mar. 30, 2022) (quoting *Car-Freshner*, 980 F.3d at 327) ("the sophistication of the relevant consumer group"); *see Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (court "not required to credit conclusory allegations or legal conclusions couched as factual allegations" (alterations and citation omitted)). That Hearst and Gray are competitors (Factors 3 and 4) only serves to underscore that Gray—by attempting to prevent its competitor from using a mark that includes a synonym of a word in Gray's weak mark—is trying to establish "a complete monopoly on use of a descriptive term simply by grabbing it first." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004). Gray offers no limiting principle to its argument or even attempt to suggest that it does not purport to exercise dominion over any use of a term that conveys that a news channel will provide the first alert or warning of traffic or weather issues. The fact that Gray instead takes refuge in its antitrust immunity and boldly claims the First Amendment simply "doesn't apply" is telling. Opp. 19-20.

## II. GRAY HAS FAILED TO STATE A CLAIM UNDER N.Y. GEN. BUS. LAW § 349.

Gray does not dispute that, if its federal claims fail, then its state law claim fails, too. *See*

Opp. 16-17.

Even if Gray could state a claim for trademark infringement, it cannot plead a claim under N.Y. Gen. Bus. Law § 349. "[T]he prevailing view in the Second Circuit is that trademark infringement claims are not cognizable under § 349 unless there is specific and substantial injury to the public interest over and above the ordinary trademark infringement." *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 543 (S.D.N.Y. 2012) (alterations and citation omitted). As such, "it is well-established that trademark infringement actions alleging only general consumer confusion do not threaten the direct harm to consumers for purposes of stating a claim under NYGBL § 349." *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-0946, 2015 WL 1299259, at *14 (E.D.N.Y. Mar. 23, 2015) (quoting *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 306 (E.D.N.Y. 2014)). Gray's argument that it has adequately "alleged consumer-facing conduct and impact on consumers," Opp. 17, is misleading; in none of the cases cited by Gray was the § 349 claim based on allegations of trademark infringement.[6]

## CONCLUSION

The Court should dismiss Gray's Complaint. That dismissal should be with prejudice, as Gray does not request leave to file a Third Amended Complaint should the Motion be granted.

---

[6] Opp. 16-17 (citing *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54 (2d Cir. 2010) (state law claims regarding life insurance dispute; no trademark infringement claims), *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632 (S.D.N.Y. 2016) (false advertising claims; no trademark infringement claims), *Aghaeepour v. N. Leasing Sys., Inc.*, No. 14 CV 5449 (NSR), 2015 WL 7758894, at *15 (S.D.N.Y. Dec. 1, 2015) (RICO and fraud claims against defendant who "routinely filed allegedly fraudulent lawsuits"; no trademark infringement claims), *order corrected on denial of reconsideration*, No. 14 CV 5449 (NSR), 2016 WL 828130 (S.D.N.Y. Feb. 25, 2016); *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741 (N.Y. 1995) (state law claims arising from deceptive acts in opening bank accounts; no trademark infringement claims); *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 476 (E.D.N.Y. 2009) (claim under § 349 based not on alleged use of plaintiff's mark, but rather on deceptive use of "images of the plaintiffs" in advertising that is "likely to mislead"); *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 9 (2d Dep't 2012) (state law claims against car insurance company for "deceiv[ing]" claimants regarding repair shop work; no trademark infringement claims).

Dated: November 13, 2025
New York, New York

By: /s/ Nathaniel S. Boyer

Jonathan R. Donnellan
Ravi V. Sitwala
Nathaniel S. Boyer
The Hearst Corporation
Office of General Counsel
300 West 57th Street, 40th Floor
New York, New York 10019
nathaniel.boyer@hearst.com
Phone: (212) 649-2030

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on November 13, 2025.

/s/ Nathaniel S. Boyer
Nathaniel S. Boyer

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), I certify that the foregoing memorandum of law complies with all formatting requirements of this Court and contains 3,457 words, including footnotes and headings but excluding the caption page, this certificate, tables, and the signature blocks. I relied on the word count of my word processing program used to prepare this brief.

/s/ Nathaniel S. Boyer
Nathaniel S. Boyer