USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/26/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GRAY LOCAL MEDIA, INC.,

Plaintiff,

-against-

THE HEARST CORPORATION, a Delaware corporation, and HEARST TELEVISION, INC., a Delaware corporation,

Defendants.

1:25-cv-05393-MKV

OPINION & ORDER GRANTING IN PART & DENYING IN PART MOTION TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Gray Local Media, Inc. ("Plaintiff" or "Gray") initiated this action against Defendants the Hearst Corporation and Hearst Television, Inc. (together, "Defendants" or "Hearst") with the filing of a complaint, attaching two exhibits. [ECF No. 7]. Thereafter, Plaintiff filed an amended complaint, attaching eleven exhibits. [ECF No. 13].

Thereafter, Defendants submitted a request for a pre-motion conference on an anticipated motion to dismiss the amended complaint, which Plaintiff opposed. [ECF Nos. 29, 30]. The Court afforded Plaintiff one "last opportunity to amend the complaint in response to arguments raised in the parties' letters." [ECF No. 31] at 1.

Plaintiff did so, attaching eleven exhibits. [ECF No. 36] (the "Second Amended Complaint" or "SAC"). The Second Amended Complaint seeks injunctive relief, accounting and disgorgement, damages, and costs and fees for alleged trademark infringement and unfair competition under the Lanham Act, *see* 15 U.S.C. §§ 1114, 1125(a), and for unfair and deceptive trade practices under Delaware law, *see* Del. Code Ann. tit. 6, §§ 2531–2536, and New York law, *see* N.Y. Gen. Bus. Law § 349. *See* SAC at 24–28.

Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), [ECF No. 37] (the "Motion"), and filed a memorandum of law in support, [ECF No. 38] (the "Memorandum" or "Mem."), along with the declaration of Nathaniel S. Boyer, [ECF No. 39] (the "Boyer Declaration" or "Boyer Decl."), and exhibits attached thereto, [ECF Nos. 39-1, -2]. Plaintiff opposed. [ECF No. 40] (the "Opposition" or "Opp."). Defendants replied. [ECF No. 41] (the "Reply").

The Motion is fully briefed. For the reasons set forth below, the Motion is granted in part and otherwise in large part denied.

## BACKGROUND

Gray is a provider of local news, weather, and traffic reporting across the United States. SAC ¶¶ 1. Since 2005, it has used the mark FIRST ALERT WEATHER for weather reporting and, since 2006, the mark FIRST ALERT TRAFFIC for traffic reporting ("Plaintiff's Marks"). *Id.* ¶¶ 2–3. Both are federally registered and have become incontestable. *Id.*; *see also id.* ¶¶ 19, 21; [ECF Nos. 36-1, -2].

Hearst operates in similar local markets across the United States. *Id.* ¶ 5. In the past, Hearst has entered into licensing agreements permitting it to make limited use of Plaintiff's Marks in certain of these local markets. *Id.* ¶¶ 29, 43; *see also* [ECF Nos. 36-3–11]. Except for one agreement covering Hearst's use of the FIRST ALERT TRAFFIC mark on Kansas City stations, *id.* ¶ 29, the licensing agreements have all since expired. *Id.* ¶¶ 29, 43; *see also* [ECF Nos. 36-3–11].

As the licensing agreements expired, Hearst began to use the marks FIRST WARNING WEATHER and FIRST WARNING TRAFFIC ("Defendants' Marks") in the same or similar contexts. *Id.* ¶¶ 31–35, 45. Hearst sought registration of its FIRST WARNING WEATHER mark,

but the United States Patent and Trademark Office (the "USPTO") rejected the application. *Id.* ¶¶ 36–37; *see also* [ECF No. 39-1].[1] In October 2023, Gray requested that Hearst cease and desist from use of Defendant's Marks, which Hearst declined to do, instead expanding that use. *Id.* ¶ 48. Hearst also declined to comply with a request to the same effect made by counsel in June 2025. *Id.* ¶¶ 49–50.

## STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The "plausibility standard" articulated in *Iqbal* "is not akin to a 'probability requirement,'' but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citation modified, quoting *Twombly*, 550 U.S. at 557).

In considering a Rule 12(b)(6) motion, the Court "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Coyle v. Coyle*, 153 F. App'x 10, 11 (2d Cir. 2005) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). The Court must "accept as true all factual

[1] By way of a footnote in the Memorandum, apparently hoping to highlight alleged inconsistencies in the USPTO's adjudicative process, Hearst attempts to place before the Court the USPTO's rejection of Hearst's application to register its FIRST WARNING TRAFFIC mark as well. Mem. at 22–23 n.7 (citing [ECF No. 39-2]). Plaintiff does not refer to this application or USPTO decision in the Second Amended Complaint, and it is in any event immaterial to the Court's analysis.

statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, this "tenet . . . is inapplicable to legal conclusions" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation modified).

## ANALYSIS

Hearst urges the Court to dismiss Plaintiff's claims on the pleadings. With respect to the Lanham Act claims (Counts I and II), Hearst principally argues that Plaintiff has not plausibly alleged a likelihood of consumer confusion. *See* MTD at 12–22. Hearst also argues that Plaintiff "improperly seeks to monopolize the English language." *Id.* at 23 (citation modified).

Hearst argues that the state-law claim (Count III) fails for the same reasons, and for the additional reason that "Gray does not allege, and cannot allege, any public harm"—a requirement under New York law. *Id.* at 23–24.

Except with respect to the "public harm" requirement, Hearst's arguments are poorly conceived at this stage of the litigation. The Court accordingly denies the motion to dismiss with respect to the Lanham Act claims and grants it in part with respect to the claim under state law.

### I. Lanham Act

Both of Plaintiff's claims under the Lanham Act are subject to the same basic analysis. *See 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406 (2d Cir. 2005). As relevant here, "what Plaintiff needs to demonstrate is that it has a valid mark entitled to protection and that Defendant[s'] use of it is likely to cause confusion." *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993) (citation modified).

The first element is undisputed: Gray pled the existence of valid—and, indeed, registered and incontestable—marks. *See* SAC ¶¶ 2–3, 19, 21; [ECF Nos. 36-1, -2].[2]

With respect to the second element, courts in this Circuit consider eight factors originally identified by the Second Circuit in *Polaroid v. Polarad Electronics*, 287 F.2d 492, 497 (2d Cir. 1961):

> (i) the strength of the senior user's marks; (ii) the similarity of the parties' marks; (iii) the market proximity of their products; (iv) the likelihood that the senior user will bridge any gap separating the parties' current markets; (v) the existence of actual consumer confusion; (vi) whether the junior user acted in bad faith in adopting its mark; (vii) the quality of the junior user's products;[[3]] and (viii) the sophistication of the relevant consumer group.

*Car-Freshner Corp. v. American Covers, LLC*, 980 F.3d 314, 327 (2d Cir. 2020) (citation modified, restating the *Polaroid* factors). "No formula is available" to guide the Court in balancing these factors. *Id.* at 334.

"The *Polaroid* test . . . is a fact-intensive inquiry that depends greatly on the particulars of each case." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 307 (2d Cir. 2013) (citation modified). For this reason, the Second Circuit "recognize[s] that the likelihood of confusion test . . . ordinarily does not lend itself to a motion for judgment on the pleadings." *1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 255 (2d Cir. 2024) (citation modified). At the same time, because the Second Circuit "now . . . consider[s] likelihood of confusion to be a question of law," *Car-Freshner*, 980 F.3d at 326 n.4 (citation modified), "district courts can and do properly dismiss trademark infringement

---

[2] "A registered mark becomes incontestable if it has been in continuous use for five consecutive years subsequent to its registration and is still in use," at which point "its registration 'shall be conclusive evidence . . . of the registrant's exclusive right to use the registered mark in commerce,' subject to defenses not here relevant." *Gruner + Jahr*, 991 F.2d at 1076 (citing 15 U.S.C. § 1065 and quoting 15 U.S.C. § 1115(b)).

[3] The Parties agree that this factor is neutral at this stage, *see* MTD at 21; Opp. at 15; Reply at 9, and therefore the Court does not address it below.

claims when the allegation of consumer confusion is implausible," *1-800 Contacts*, 119 F.4th at 255 (citation modified).[4]

Ultimately, the inquiry is whether Plaintiff has plausibly alleged that, "looking at the products in their totality, consumers are likely to be confused" about the products' source. *1-800 Contacts*, 119 F.4th at 255 (quoting *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009)). The Court now proceeds through the *Polaroid* factors to answer that basically familiar question.

**a. <u>Strength of Plaintiff's Marks</u>**

"To describe different degrees of inherent distinctiveness, the trademark law utilizes four categories. In order of ascending strength, they are: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 120 (2d Cir. 2022). Plaintiff does not contend that its Marks are arbitrary or fanciful. *See* Opp. at 9 n.1 ("As to conceptual strength, FIRST ALERT WEATHER and FIRST ALERT TRAFFIC are suggestive, not distinctive."). Nor do Defendants contend that they are outright generic. *See* MTD at 14 (contending that "the FIRST ALERT Marks are merely descriptive" (citation modified)). Accordingly, the Court focuses only on the distinction between descriptive and suggestive marks.

[4] The Court notes at the outset that, in *1-800 Contacts*, "the pleadings failed to plausibly allege that [defendant] used [plaintiff's] marks ***anywhere*** during the search advertising process outside of its purchase at the initial, permissible keyword auction," such that "the dissimilarity of the marks" was "dispositive." *Id.* (citation modified, emphasis original). More generally, the Court is sympathetic to Plaintiff's argument that "each of Hearst's authorities on this point is so readily distinguishable that it proves the rule" against deciding likelihood of confusion against a plaintiff at the motion to dismiss stage. Opp. at 6 (distinguishing *1-800 Contacts*, 119 F.4th 234; *Eliya, Inc. v. Steve Madden*, 749 F. App'x 43 (2d Cir. 2018); *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112 (2d Cir. 1984); *Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012)). The Court does, however, recognize, as just discussed, that this is not so much a "rule" as a heuristic.

A descriptive mark directly "tells something about a product, its qualities, ingredients or characteristics." *Gruner + Jahr*, 991 F.2d at1076. A suggestive mark, by contrast, only "suggests the product," such that "it may take imagination to grasp the nature of the product." *Id.*[5]

Plaintiff's Marks are suggestive, in that they "suggest (rather than directly describe)" Plaintiff's products and the "attributes" thereof. *RiseandShine*, 41 F.4th at 121. Unlike merely descriptive marks, Plaintiff's Marks do not immediately "conjure[] up the image of the precise good with which [they are] associated." *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 163 (2d Cir. 2016) (citation modified). As Plaintiff notes, FIRST ALERT WEATHER and FIRST ALERT TRAFFIC "could easily describe, for example, emergency notification services; GPS navigation systems; fleet management systems; rideshare platforms; smart home devices; agricultural crop monitoring systems; or travel-planning services." Opp. at 9 n.1.

Defendants are all but willing to concede this point on reply. Reply at 3–4. They are correct, however, to point out that it does not automatically make Plaintiff's Marks strong. *Id.*; *see Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739 (2d Cir. 1998) ("Suggestiveness, however, does not necessarily determine the issue regarding the strength of the mark."). Instead, Plaintiff's Marks "conjure[] up an essential or important aspect of the product." *RiseandShine*, 41 F.4th at 122. Namely, Plaintiff's Marks suggest that Plaintiff will provide information about traffic or the weather first and urgently.

Arguably, because this suggestion verges on mere description, it "represent[s] weakness and place[s] the mark[s] at the low end of the spectrum of suggestive marks." *Id.* at 121 (citing

[5] A descriptive mark "may be protected only if it has acquired secondary meaning, while a suggestive mark is protected without a showing of secondary meaning." *Id.* Nevertheless, as already noted and as discussed further below, statutory incontestability obviates this requirement. *See id.* at 1077 ("What this means is that a defendant in an infringement suit—where plaintiff has an incontestable mark because of five years' registration—may not succeed in a defense that declares the mark is entitled to no protection because it is descriptive.").

*Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 385 (2d Cir. 2005)). But Defendants do not point to allegations or other materials the Court might consider to establish Defendants' contention that Plaintiff's Marks are "widely used" terms in the relevant markets. *See* MTD at 14 (citing, *inter alia*, *Car-Freshner*, 980 F.3d at 330; *Streetwise*, 159 F.3d at 744).

Moreover, "an incontestible registered trademark"—like Plaintiff's Marks here—"enjoys a conclusive presumption of distinctiveness." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 457 (2d Cir. 2004) (citation modified, citing *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 204–05 (1985)).[6] As Defendants note, *see* Reply at 4, while the Court may "properly consider[]" this presumption "in analyzing the strength of the mark for likelihood of confusion purposes," it is principally operative "for protectability purposes." *Gruner + Jahr*, 991 F.2d at 1078. Obviously, moreover, it will not extend further than the registrations themselves. *See Savin*, 391 F.3d at 457 (While "an incontestible registered trademark enjoys a conclusive presumption of distinctiveness . . . , the presumption of an exclusive right to use the mark extends only so far as the goods or services noted in the registration certificate."). Nor can a trademark plaintiff invoke the presumption to cover elements of its registered mark that, standing alone, "scarcely can be held" unavailable "for use by others." *Gruner + Jahr*, 991 F.2d at 1078 ("The actual trademark registration in this case protects not the name or the word 'parents,' but rather the stylized logo of that name including the unusual form and shape of the letters comprising the word." (citation modified)).

Still, here, Plaintiff's Marks are registered "without claim to any particular font, style, size, or color" for use in "entertainment services in the nature of on-going television programs in the field of weather and weather reporting," [ECF No. 36-1], and "traffic and traffic reporting," [ECF

[6] Defendants concede both registration and incontestability, *see* Reply at 4, and do not brief any impact this might have on the aptness of pleading under Title 15, United States Code, Section 1125(a).

Nos. 36-2]. These registrations are broader than those in *Savin* and *Gruner + Jahr*, and the Court is bound by statute to recognize Plaintiff's Marks as at least minimally distinctive. *See Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 961 (2d Cir. 1996) ("The registration does not just protect the logo but the words as well, and a trier of fact could reasonably conclude that [Plaintiff's] word mark, having been incontestable for five years, is strong for the purposes of the *Polaroid* test." (citation modified)). But it need not find them strong. *See Gruner + Jahr*, 991 F.2d at 1078.

Accordingly, this factor is neutral.

**b. <u>Similarity of the Parties' Marks</u>**

Defendants' and Plaintiff's Marks are similar.[7] In assessing this factor, "courts must analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and 'the totality of factors that could cause confusion among prospective purchasers.'" *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) (quoting *Gruner + Jahr*, 991 F.2d at 1078)).

Obviously, the words ALERT and WARNING, in themselves, "do not sound alike, nor do they look alike." MTD at 15 (quoting *Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 588 (2d Cir. 1993)). But Plaintiff's and Defendants' Marks are otherwise identical, and "it is extremely unusual for the mark of a junior user to include two identical words of a senior user's mark in sequence." *Car-Freshner*, 980 F.3d at 330 (MIDNIGHT BLACK / ICE STORM similar to BLACK ICE). Moreover, ALERT and WARNING may be "different words," but they share a "similar meaning," which "may tend to confuse." *American Home Prods. Corp. v. Johnson Chem. Co.*, 589 F.2d 103, 107 (2d Cir. 1978).

[7] The Court, in this connection, affords at most "limited" "deference," *Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 292, 302 (S.D.N.Y. 2012), to the USPTO's non-final determination concerning the similarity between FIRST ALERT WEATHER and FIRST WARNING WEATHER in denying Hearst's application to register the latter, SAC ¶ 37; *see also* [ECF No. 39-1].

The Court recognizes that the identical words in Plaintiff's and Defendants' Marks are not in immediate sequence. Reply at 6 (distinguishing *Car-Freshner*, 980 F.3d 314; *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290 (S.D.N.Y. 2021)). But the Court does not see the "similar meaning" of the words ALERT and WARNING as lying "entirely in their descriptive reference" to weather and traffic reporting. Reply at 5 (quoting *American Cyanamid Corp. v. Connaught Lab'ys, Inc.*, 800 F.2d 306 (2d Cir. 1986)). Instead, as discussed above, even if not "fanciful," *American Home*, 589 F.2d at 107, the word ALERT is the most distinctive single element of Plaintiff's Marks.

The Court's analysis is not altered by Hearst's insistence that its "prominent use of its well-known house brand" alongside FIRST WARNING WEATHER and FIRST WARNING TRAFFIC "significantly reduces, if not altogether eliminates, the likelihood that consumers will be confused as to the source of the parties' products." MTD at 16 (quoting *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000)). Indeed, judging—as the Court must—only by the Second Amended Complaint and documents attached thereto, the Court has trouble taking this argument seriously.

Defendants assert that "no reasonable viewer of Hearst's weather and traffic news programming would, upon seeing" the "call sign[s] . . . NBC 5, WESH 2, ABC 25 WPBF, or WDSU 6," "conclude that that station's programming is somehow associated with the programming of a different station." MTD at 16 (citation modified, quoting SAC ¶ 31). But these call signs are not like NABISCO or even QUILTED NORTHERN: At minimum, "discovery is necessary" to determine whether consumers even "recognize" these purported "house mark[s] ***as*** . . . house mark[s]" at all, let alone whether they associate them with Hearst in particular. Opp. at 19 (distinguishing *Nabisco*, 220 F.3d 43; *Playtex Prods., Inc. v. Ga.-Pac. Corp.*, 390 F.3d 158,

164 (2d Cir. 2004)). At this stage, the exemplary smattering of call signs reflected in the Second Amended Complaint does not at all undermine the plausibility of Plaintiff's allegations that consumers will likely be confused by Defendants' use of marks that are otherwise "almost synonymous." *Playtex Prods.*, 390 F.3d at 164.

Accordingly, this factor weighs in Plaintiff's favor.

**c. <u>Proximity of the Parties' Marks in the Marketplace and the Likelihood that Plaintiff will Bridge any Gap</u>**

The Parties agree that they operate in the same markets, rendering the "bridging" factor irrelevant. *See* MTD at 21; Opp. at 12; Reply at 9. Because "they provide essentially the same service to the same customer base, their services are related and proximate." *Morningside Grp. Ltd. v. Morningside Cap. Grp., L.L.C.*, 182 F.3d 133, 140 (2d Cir. 1999) (citation modified).

Defendants maintain that this "only serves to underscore that Gray—by attempting to prevent its competitor from using a mark that includes a synonym of a word in Gray's weak mark—is trying to establish 'a complete monopoly on use of a descriptive term simply by grabbing it first.'" Reply at 9 (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004)). In arguing this point, the Parties do little more than rehash the central policy debates of trademark law. *See* MTD at 23 ("Following Gray's logic, no other speaker can describe its weather or traffic information using the word 'first' along with any synonym of 'alert.'"); Opp. at 19–20 (arguing about the relationship between antitrust and free-speech law, on the one hand, and trademark law, on the other); Reply at 9.

The Court resolves this debate by applying the *Polaroid* factors in keeping with Second Circuit precedent. This factor weighs in Plaintiff's favor. *See Wonderful Co. LLC v. Nut Cravings Inc.*, No. 23-7540-CV, 2025 WL 212064, at *3 (2d Cir. Jan. 16, 2025) (summary order) ("Competitive proximity . . . favors" the plaintiff. (citation modified)).

**d. <u>Evidence of Actual Consumer Confusion</u>**

Plaintiff does not allege actual consumer confusion. Defendants are not wrong that, after years of Plaintiff's and Defendants' Marks being used concurrently, *see* SAC ¶ 35(c), some evidence of actual consumer confusion is to be expected. MTD at 19–20 (collecting cases). Nevertheless, "such proof is not needed at the pleading stage." *Blockchange Ventures I GP, LLC v. Blockchange, Inc.*, No. 21-cv-891 (PAE), 2021 WL 4340648, at *5 n.4 (S.D.N.Y. Sept. 22, 2021). "The mere absence of allegations of actual confusion at the motion-to-dismiss stage does not suggest the Court must necessarily view this factor in [Defendants'] favor." *Wonderful Co.*, 2025 WL 212064, at *3 (citation modified).

Instead, "as we are bound to make all reasonable inferences in [Plaintiff's] favor, we assess this factor as neutral." *Id.* (citation modified).

**e. <u>Defendants' Good or Bad Faith in Adopting Its Mark</u>**

The Parties dispute the significance of Defendants' adoption of the FIRST WARNING WEATHER and TRAFFIC marks as its licenses to use Plaintiff's Marks expired. *See* MTD at 20–21; Opp. at 12–13; Reply at 8–9. On the one hand, "actual or constructive knowledge" of a senior user's mark may indicate bad faith "where such prior knowledge is accompanied by similarities so strong that it seems plain that deliberate copying has occurred." *Paddington*, 996 F.2d at 587 (citation modified). On the other hand, "prior knowledge of a senior user's trademark does not necessarily give rise to an inference of bad faith and may be consistent with good faith." *Wonderful Co.*, 2025 WL 212064, at *3 (citation modified, quoting *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 397 (2d Cir. 1995)). For example, a junior user may simply have "selected a mark that reflected the product's characteristics." *Id.* at 398.

Here, even drawing all inferences in Plaintiff's favor, the allegations in the Second Amended Complaint are equally "consistent with" either good or bad faith, and thus are insufficient to "nudge[]" the claim of bad faith "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 557, 570. Accordingly, this factor is neutral. *Wonderful Co.*, 2025 WL 212064, at *3 (Plaintiff's "allegations on this factor do not rise beyond the conclusory sort. For that reason, we assess this factor as neutral.").

**f. <u>Consumer Sophistication</u>**

"To the extent that a senior user's potential customers, and other entities with which it hopes to maintain its reputation, do not have a sophisticated knowledge of the overall market, the likelihood is higher that similarity of trademarks may lead them to believe that a junior user's activities are affiliated with those of the senior user." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 43 (2d Cir. 2016) (citation modified). Defendants argue that "Gray makes only a conclusory allegation that its viewers are 'low-consideration' consumers,'" such that this factor should be neutral. MTD at 21 (quoting SAC ¶ 40).[8]

It is not hard to imagine that Plaintiff—"as an owner of local news media companies"—does indeed have first-hand knowledge of "the level of deliberation exercised by consumers of its services," at least in the form of viewership data. Opp. at 14 (citing *Burnett v. Springfield Twp.*, No. CIV.A. 13-1646, 2014 WL 3109963, at *6 (E.D. Pa. July 8, 2014); *Flannery v. County of Niagara*, 763 F. Supp. 3d 364, 388 (W.D.N.Y. 2025)). Nevertheless, that is not quite what Plaintiff

[8] Defendants also point out the perceived contradiction that Plaintiff "claims . . . that the same people it alleges are unsophisticated low-consideration consumers are also familiar with the reality that single corporations often own and operate multiple local television news stations, each identified by different call signs." Reply at 6 n.4 (citation modified, quoting Opp. at 14 (citing SAC ¶ 40), 18). In the Court's view, this contradiction is the result of imprecise speculation by Plaintiff. *See* Opp. at 18–19 ("The facts to be developed in discovery are likely to demonstrate . . . that consumers are likely to mistakenly assume that different stations using" "different call signs" in conjunction with Plaintiff's or Defendants' Marks "are owned or operated by the same parent." (citation modified)). What seems more likely, as already discussed, is that reasonable consumers do not understand the precise source-designating significance of local call signs one way or the other.

alleged. SAC ¶ 40 ("Consumers of local news services are typically 'low-consideration' consumers.").

Moreover, Plaintiff seems all but willing to concede that this factor should be neutral. Opp. at 15 n.3 (citing *Reply All Corp. v. Gimlet Media, LLC*, 843 F. App'x 392, 399 (2d Cir. 2021)). That is how the Court will treat it.

**g. <u>Balancing the Factors</u>**

While "no single *Polaroid* factor is preeminent, . . . the first three *Polaroid* factors are perhaps the most significant." *Car-Freshner*, 980 F.3d at 334 n.20 (citation modified, emphasis omitted, quoting "various statements . . . that cannot be easily harmonized"). Here, the second and third factors weigh in Plaintiff's favor. The rest are neutral. Plaintiff has plausibly alleged a likelihood of confusion. *See Wonderful Co.*, 2025 WL 212064, at *4 (finding, without "fixat[ing] on the mere enumeration of factors," that, all else "remain[ing] neutral," plaintiff had adequately alleged a likelihood of confusion by "alleg[ing] enough of an overlap . . . in both appearance and product market").

Defendants' attempt to distinguish *Wonderful Co.* on the basis that "there is no similarity between the word marks at issue in this case," Reply at 2, is baseless—if not absurd—for the reasons already discussed. Nor do they meaningfully develop their argument that *Wonderful Co.* is somehow distinguishable for having involved trade dress rather than marks. *See id.*

Accordingly, with respect to the Lanham Act claims, Defendants' Motion is DENIED.

**II. <u>State Law</u>**

As presented by the Parties, the only difference between the standard applicable to Plaintiff's Lanham Act and state law claims is the requirement under New York law that a plaintiff suing under New York General Business Law Section 349 allege some form of public harm. *See*

MTD at 23–24; Opp. at 16–17; Reply at 9–10. Defendants fail to develop this argument with respect to Delaware law. *See* MTD at 14; Reply at 10.

"The majority view in this Circuit holds that trademark infringement claims are not cognizable under § 349 unless there is specific and substantial injury to the public interest over and above the ordinary trademark infringement." *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 280 (S.D.N.Y. 2022) (citation modified), *aff'd*, No. 23-12-CV, 2024 WL 1152520 (2d Cir. Mar. 18, 2024). The Court agrees, and since Plaintiff makes no such allegation, Plaintiff's claim under New York General Business Law Section 349 is DISMISSED for failure to state a claim.

**CONCLUSION**

The Motion is DENIED, except with respect to Plaintiff's claim under New York General Business Law Section 349. With respect to the New York General Business Law Section 349 claim, the Motion is GRANTED. The Clerk of Court is respectfully requested to terminate docket entry number thirty-seven. Defendants are directed to file an answer to Plaintiff's Second Amended Complaint within thirty days.

**SO ORDERED.**

**Dated: September 26, 2026**
**New York, New York**

Mary Kay Vyskocil

**MARY KAY VYSKOCIL**
**United States District Judge**